UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TYLER KUHK,<br><br>                    Plaintiff,<br><br>        v.<br><br>PLAYSTUDIOS INC,<br><br>                    Defendant. | CASE NO. 2:24-cv-00460-TL<br><br>ORDER ON RENEWED MOTION TO COMPEL ARBITRATION |

This matter comes before the Court on Defendant's Renewed Motion to Compel Arbitration.[1] Dkt. No. 34. Having considered Plaintiff's Response (Dkt. No. 38), Defendant's Reply (Dkt. No. 42), and the relevant record, the Court DENIES Defendant's motion.

//

//

---

[1] The Court notes that despite certifying that its counsel had reviewed this Court's Standing Order (Dkt. No. 17 at 7), Defendant did not include a table of contents or authorities with its renewed motion as required by the Standing Order for briefs over ten pages in length. Judge Tana Lin, *Standing Order for All Civil Cases*, Section II.C, https://wawd-ecf.sso.dcn./doc1/197111165269 (last updated Nov. 1, 2024); *see also* Dkt. No. 5.

ORDER ON RENEWED MOTION TO COMPEL ARBITRATION – 1

## I.    BACKGROUND

The Court assumes familiarity with the facts of this case. *See* Dkt. No. 1-2 (Complaint); Dkt. No. 13 (Order on Motion to Dismiss and Compel Arbitration). However, through the briefing currently before the Court, the Parties have provided additional facts which are the basis of the Court's ruling, thus the Court will supplement the factual record.

In its initial motion to compel arbitration, Defendant argued that because Plaintiff has played Defendant's games, Plaintiff is bound by the terms of service to which he agreed to in order to play the games. Dkt. No. 4 (Motion to Dismiss and Compel Arbitration). The Court's order on Defendant's initial motion to compel arbitration noted that Defendant failed to provide "even the most basic information about *how* users presumably become bound to Defendant's Terms of Service (to try to establish that Plaintiff perhaps had actual notice), or that those Terms of Service contained an arbitration clause for the duration of the time Plaintiff played Defendant's games." Dkt. No. 13 at 11. This Court went on to find that Defendant failed to meet its burden to prove by a preponderance of the evidence that the Parties had formed an agreement. *Id*. Defendant now asserts that it has new information proving that Plaintiff, specifically, accepted Defendant's Terms of Service (TOS), and; therefore, "the discovery of these new facts mandates a different result and a ruling compelling this matter to arbitration." Dkt. No. 34 at 2.

In February 2025, Defendant produced an excel spreadsheet to Plaintiff titled "PLAYSTUDIOS000022 (Native)_2025-01-29 Kuhk Spend Activity." Dkt. No. 39 ¶ 6 (Boes Decl.). The title of the document suggests it was created on January 29, 2025. *Id*. The spreadsheet includes "Mr. Kuhk's name, email address, and app expenditures, as well as an identification number labeled 'PS ID.'" *Id*. The same day it produced this spreadsheet, Defendant produced another Excel spreadsheet titled "PLAYSTUDIOS000021

(Native)_AP5NGY_mvm_sends." *Id*. Defendant admits to providing this discovery to Plaintiff in February 2025. Dkt. No. 42 at 2.

Defendant asserts it "determined" during discovery that "on September 4, 2022, Plaintiff was presented with and accepted a clickwrap agreement, stating, 'To continue playing, please confirm that you agree to our Terms of Service [("TOS")] and have read our Privacy Policy.'" Dkt. No. 34 at 1, 10. Defendant asserts "Plaintiff is identifiable within [Defendant's] data" as the person who accepted the TOS because the action is associated with Plaintiff's email address, "tkuhk@lakehead," Plaintiff's game support code ("AP5NGY"), and an event code associated with Plaintiff. Dkt. No. 33 ¶ 7 (Mathews Decl.)[2]; *see also* Dkt. No. 34 at 6–7 (showing screenshot of Plaintiff's profile within Defendant's internal data system).

Defendant states that the new evidence it presents to the Court proving Plaintiff, specifically, accepted Defendant's TOS, was not discovered until June 2025. Dkt. No. 42 at 4; Dkt. No. 43 ¶ 3 (Richter Decl.). Defendant asserts that "as soon as possible" after discovering the documents showing Plaintiff accepting the TOS, it produced the discovery to Plaintiff, and that within five weeks it filed the instant renewed motion to compel arbitration. Dkt. No. 42 at 4. Defendant filed the instant motion on July 30, 2025.

## II.   LEGAL STANDARD

As an initial matter, the Ninth Circuit has noted that "[t]here is no such animal as a 'renewed petition to compel arbitration' in the Federal Rules of Civil Procedure," and such motions "do[] not clearly fit within the procedural mechanisms identified in the Rules."[3] *Circuit*

---

[2] Mr. Mathews is the Executive Vice President and Co-Founder of Playstudios US, LLC.

[3] Defendant asserts that the instant motion should be considered a renewed motion to compel. Defendant asserts, "courts in the Ninth Circuit have permitted successive motions to compel arbitration particularly when, as here, the factual record has been expanded and the initial motion was denied without prejudice." Dkt. No. 42 at 5. Even if the Court accepted Defendant's argument, it would reject Defendant's assertion that the factual record has been expanded in a manner that justifies its motion. *See infra* Section III.A.1.

*City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 (9th Cir. 2005). However, it has also held that a district court has discretion to "reconsider an interlocutory order denying a motion to compel arbitration" under Federal Rule of Civil Procedure 60(b). *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858–59 (9th Cir. 2022).

Rule 60(b) permits relief for, in relevant part, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). "Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'" *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (citation omitted); *see also Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1136 (9th Cir. 2022). Evidence is not considered newly discovered under Rule 60(b)(2) if it was in the moving party's possession at the time the order was issued or could have been discovered with reasonable diligence. *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987); *see also Berman* 30 F.4th 849, 859 (9th Cir. 2022); *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 643 (S.D. Tex. 2009) (denying Rule 60(b) motion where movant "cites no cases supporting a finding of due diligence when the documents not produced were located in the moving party's own files," despite presence of over one million pertinent records).

### III.    DISCUSSION

Defendant's motion does not provide a legal standard for consideration by the Court. *See generally* Dkt. No. 34. Plaintiff asserts that Defendant's motion should be viewed as a motion for reconsideration under LCR 7(h). Dkt. No. 38 at 11. If not considered a motion for

reconsideration, Plaintiff asserts Defendant's motion should be viewed as a Rule 60(b) motion. *Id*. at 12. In reply, Defendant argues that renewed motions to compel are proper and cites to non-binding California district court cases where the factual record had been expanded, which is one of the grounds for relief under Rule 60(b). Dkt. No. 42 at 5–6. Given this and that the Ninth Circuit has analyzed these types of motions under Rule 60(b), the Court will likewise view the instant motion under Rule 60(b). Ultimately, the Court finds Defendant does not meet the Rule 60(b) standard.

**A.      Rule 60(b) Standard**

**1.          Newly Discovered Evidence**

Defendant requests the Court grant the present motion because "the factual record has been expanded" with "newly discovered evidence . . . ." Dkt. No. 42 at 4, 5. Courts have generally held that an "'expanded factual record' refers to new evidence, not evidence that a party had in their possession but chose not to present to the court on a prior motion." *See Fong v. U.S. Bancorp*, No. C22-1291, 2025 WL 721628, at *5 (E.D. Cal. Mar. 6, 2025) (collecting cases).

In its motion, Defendant states that "[d]uring the course of discovery . . . Playstudios determined that on September 4, 2022, Plaintiff Kuhk affirmatively accepted and agreed to the TOS." Dkt. No. 34 at 1. In response, Plaintiff correctly points out that Defendant's motion does not say *how* it discovered the "new" information. Dkt. No. 38 at 9. Further, Plaintiff argues that "Playstudios has had the evidence in its possession all along" (*id*. at 13), and that even if it did not discover the TOS agreement at the inception of the case, it sat on the evidence for at least seven months because the "evidence appears to be linked to Mr. Kuhk's email accounts, which Playstudios knew at least as early as January 2025" (*id*. at 9). Plaintiff goes on to argue that once

Defendant received confirmation of Plaintiff's email address, the email address "appear[s] to have led Playstudios to 'find' its 'pop-up.'" *Id*. at 15.

Defendant's reply arguments regarding the discovery of this "new" evidence do not provide the Court with the necessary clarity. To start, Defendant asserts, "Playstudios had not located the documents demonstrating Plaintiff agreed to and accepted the TOS until they were produced." Dkt. No. 42 at 1–2. Defendant goes on to say "Playstudios produced these documents and others upon their discovery during ongoing discovery." *Id*. Further, Defendant provides, "at the time that Playstudios brought its initial motion to compel arbitration, discovery had not yet begun, and it had not located the documents indicating that Kuhk had agreed to and accepted the TOS." *Id*. at 7. Nowhere in Defendant's reply does it explain what search methods it used in its internal data system to find the alleged proof that Plaintiff accepted the TOS agreement. *See generally* Dkt. No. 42. Without such an explanation, Defendant cannot prove that it did not have the ability to locate the needed evidence prior to the filing of its initial motion.

Upon consideration of the Parties' briefing and supporting materials, the Court concludes that Defendant has always had the search capabilities to find information such as Plaintiff's alleged acceptance of the TOS. Plaintiff asserts that Defendant "collects enormous quantities of data on its users and maintains a robust database in which it can search all sorts of information" Dkt. No. 38 at 14. For example, the evidence in the record of Defendant's robust internal data system shows that Defendant had Plaintiff's email address, support code, and player ID in its internal data system prior to written discovery and depositions. Dkt. No. 34 at 7; *see also* Dkt. No. 39 ¶ 6. In Plaintiff's deposition of a Defendant representative, Desiree Luca, Ms. Luca explained the type of "queries" that can be run to pull information from Defendant's database. Dkt. No. 39-2 at 4–5 (Luca Deposition). The queries Ms. Luca ran in preparing discovery materials returned all the in-app and off-platform virtual currency purchases, a player's

geolocation, a player's IP address—which gives the specific city of each player, the individual player IDs, and how much they spent on virtual currencies during a designated time period. *Id*. This query tool "allows searches of Device IDs, email addresses, passwords, player geolocations, player IP addresses, Facebook names, and a whole host of other unique, identifying information." Dkt. No. 38 at 14 (citing Dkt. No. 39-3 at 5–6 (Playstudios' Discovery Resp.) (identifying user information gathered by applications))). Defendant does not dispute any of these facts.

Defendant also provides some information to shed light on its internal data search capabilities. In its motion, Defendant includes a screenshot which shows that entering a user's support code will pull up a player profile, which includes, in relevant part, the player's username, email address, support code, and player ID. Dkt. No. 34 at 7; *see also* Dkt. No. 33 ¶ 3. Defendant admits that this is a way to identify users, specifically Plaintiff. *See* Dkt. No. 33 ¶¶ 2–3 ("Plaintiff is identifiable within Playstudios' data as being associated with Support Code "AP5NGY" as seen below"). This search method shows that by entering the support code, Defendant can see an email address—tkuhk@lakeheadu.ca—that matches one Plaintiff provided to Defendant. *See* Dkt. No. 34 at 7. Although Defendant does not assert that this is the method it used to find Plaintiff's player profile, thus allowing it to search for the TOS acceptance, it is evidence that a search using the support code can be run to find a player's profile.

Ultimately, Defendant admits that evidence of Plaintiff's alleged acceptance of the TOS was found in its own internal database and does not claim the evidence has not always been in its possession. *See generally* Dkt. No. 34; Dkt. No. 42. Other than using the excuse of discovery not yet beginning, Defendant is noticeably silent about why it decided not to conduct a more thorough search of Plaintiff's identifiers, and subsequently the TOS acceptance, at an earlier time.

Finally, at the time of the initial motion to compel arbitration, Defendant either knew or should have known of its own "Terms Updated pop-up." Defendant explains that it is this pop-up that required Plaintiff to affirmatively accept the updated TOS in order to play the game. Dkt. No. 34 at 5. Despite Defendant claiming that Plaintiff encountered a terms of service update pop-up on September 4, 2022 (over one and one-half years before it filed its original motion to compel arbitration) (*id*.); Defendant does not explain why it was unable to run a query within its internal database to search for the Terms Updated pop-up at the time of the initial motion to compel arbitration or how it could not have known about its own updates to its TOS. *See generally* Dkt. No. 34; Dkt. No. 42.

Therefore, the Court finds that Defendant fails to show that the evidence relied on in its motion constitutes 'newly discovered evidence' within the meaning of Rule 60(b).

**2.    Due Diligence in Discovering Any Newly Discovered Evidence**

Even if the Court assumed, *arguendo*, that the evidence was newly discovered, for the same reasons stated in the previous section, it would find that Defendant was not diligent in discovering the new evidence. But the Court also finds additional reasons to conclude that Defendant was not diligent in discovering the new evidence.

Defendant admits that it had knowledge of an existing right to compel arbitration. Dkt. No. 42 at 3. Defendant then asserts that it demonstrated that knowledge by filing its motion to compel arbitration within two weeks of removing this case to this Court. *Id.* However, there was no reason for Defendant to rush to file a motion to compel arbitration within two weeks of removal without all of the necessary information it apparently needed to fully present its motion.

In affirming a district court's denial of a defendant's motion to compel arbitration and denying the defendant's discovery request, the Ninth Circuit noted that "[a]ltough [the defendant] had the burden to present evidence of actual notice, it rolled the dice and chose not to

pursue additional discovery at the outset . . . ." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019). Similarly here, Defendant chose to roll the dice and not pursue any discovery at the outset before filing its original motion to compel. The Ninth Circuit further observed that the defendant, "as operator of the app, undoubtedly had at least some information probative of actual notice in its control, but it offered nothing on the actual notice issue." *Id.* Similarly here, while Defendant argues that it did not find the TOS agreement evidence until discovery, it evidently made no (or a clearly deficient) effort to look for such evidence through its robust query system. Defendant does not even attempt to explain if or why it chose not to look for such information earlier, despite admitting the information was found in its possession. Defendant chose instead to rush to file its motion to compel without critical information or apparently necessary discovery and then proceeded through at least seven months of additional litigation before filing a renewed motion. Dkt. No. 38 at 8.[4] Defendant must live with the consequences of its choice to file its motion to compel arbitration with the limited information it had at that time.

Given the circumstances in this case, the Court finds that Defendant did not exhibit reasonable diligence in finding the TOS information. Because Defendant cannot show that it exhibited reasonable diligence in finding Plaintiff's alleged acceptance of the TOS, the Court does not need to address the third prong of whether the evidence was so important that the production of it earlier would have likely changed the Court's Order on Motion to Dismiss and Compel Arbitration.

//

//

---

[4] Even if the Court found Defendant could somehow meet the Rule 60 requirements (it does not), the Court would still find that Defendant waived its right to compel arbitration based upon Defendant's admission that it knew of its existing right to compel arbitration and its acts inconsistent with that right. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988); *Hill v. Xerox Bus. Servs. LLC.*, 59 F.4th 457, 471–72 ((9th Cir. 2023).

ORDER ON RENEWED MOTION TO COMPEL ARBITRATION – 9

**B.    Choice of Law**

Defendant argues that even if the Court does not compel the matter to arbitration, Plaintiff's claims can only proceed under Nevada law and; therefore, Plaintiff's claims (which were brought under Washington law) must be dismissed. Dkt. No. 34 at 18. Defendant in part argues that this case is controlled by the Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468 (1989), and that *Volt* supports Defendant's assertion that the choice of law provision requires Plaintiff's claim to be brought under Nevada law. Dkt. No. 34 at 19. But *Volt* is inapplicable in a matter such as this, where the Court declines to compel the Parties to arbitrate. In *Volt*, the Court was explicit in saying that "arbitration agreements are enforced according to their terms," *id*. at 478, but it did not make a finding as to contractual agreements regarding choice of law for matters that proceed in court. Thus, because the Court denied Defendant's motion to compel arbitration, and this case will instead proceed in this Court, *Volt* does not apply.

The Court cannot reach this tacked-on issue based on the record currently before it. And while Defendant attempts to assert that Plaintiff's complaint must be dismissed for failure to state a claim due to it being brought under Washington law rather than Nevada law (*id*. at 23), "[w]hen reviewing a dismissal pursuant to Rule . . . 12(b)(6), '[the court] accept[s] as true all facts alleged in the complaint and construe[s] them in the light most favorable to plaintiff[], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (citation modified) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)). Ultimately, the present briefing from the Parties provides insufficient information for the Court to decide this issue at the present juncture, and it is irrelevant to the Court's ruling on the motion to arbitrate. As such, the Court will not reach it. This issue can be raised at a later time, if appropriate.

ORDER ON RENEWED MOTION TO COMPEL ARBITRATION – 10

**IV.    CONCLUSION**

Accordingly, the Court DENIES Defendant's Renewed Motion to Compel Arbitration. Dkt. No. 34.

Dated this 3rd day of February, 2026.

Tana Lin
United States District Judge

ORDER ON RENEWED MOTION TO COMPEL ARBITRATION – 11